UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 5:96-CR-16-JMH |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| LAWRENCE KEMP TENNILLE, | ) ) | **AND ORDER** |
| Defendant. | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on an Order [DE 422] from the Court of Appeals for the Sixth Circuit reversing both this Court's October 11, 2019, Order [DE 402] finding Defendant Lawrence Kemp Tennille's sentence should not be reduced under the First Step Act of 2018 and this Court's November 5, 2019, Order [DE 407] clarifying its October 11, 2019, decision.  Consequently, the Sixth Circuit remanded this matter to this Court "to determine whether, in its discretion, Tennille is entitled to a sentence reduction under the First Step Act." [DE 422, at 2].

In light of the Sixth Circuit's decision, this Court will determine whether Tennille is entitled to a sentence reduction, and due to the Sixth Circuit reversing the entirety of this Court's October 11, 2019 and November 5, 2019 Orders [DE 402; DE 407], the undersigned will reconsider Tennille's Motion for Leave to Appeal *in forma pauperis* [DE 398], Motion to Disagree with the U.S.

Probation Officer's Memorandum Analysis of Retroactive Application [DE 405], and Motion for Clarification [DE 406] asking the Court to further explain what was decided in its October 11, 2019, Order [DE 402]. Also, before the Court is Tennille's Notice & Request to File Appeal [DE 399] requesting the Court file his notice of appeal regarding the Court's May 17, 2019, Order [DE 376] and his Motion to Reduce Sentence Under Section 404 of the First Step Act of 2018 [DE 424], which has been fully briefed and is now ripe for review. Since the Clerk of Court has already filed Tennille's Notice of Appeal [DE 397], Tennille's request to file it will be denied as moot. Furthermore, since the Sixth Circuit has reversed the Court's October 11, 2019, Order [DE 402], Tennille's Motion for Clarification [DE 406] will be denied as moot.

## DISCUSSION

In Tennille's Motion for Leave to Appeal *in forma pauperis* [DE 398], in addition to Tennille's request for leave to appeal *in forma pauperis*, he requests the Court appoint him counsel to represent him in his appellate proceedings. [DE 398]. For the reasons stated below, the Court will grant Tennille leave to appeal *in forma pauperis* and deny his request for appointment of counsel as moot.

Pursuant to Federal Rule of Appellate Procedure 24(a)(1), a party who desires to appeal *in forma pauperis* must file a motion in the district court and must attach an affidavit that

2

demonstrates the party's inability to pay and states the issues to be presented on appeal. While Tennille did not include an affidavit demonstrating his inability to pay and stating the issues to be presented on appeal with his Motion [DE 398], "[a] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization . . . ." Fed. R. App. P. 24(a)(3). Previously, this Court granted Tennille leave to proceed *in forma pauperis* before the Sixth Circuit Court of Appeals. [DE 254; DE 362; DE 382]. Therefore, the Court will grant Tennille's request for leave to appeal *in forma pauperis*.

Since requesting the appointment of counsel, Tennille has retained counsel, Alison K. Guernsey, so his request will be denied as moot.

Previously, the Court found Tennille is not entitled to have his sentenced reduced under the First Step Act of 2018 because he was sentenced as a career offender. [DE 376]. However, since the Court's May 17, 2019, Memorandum Opinion and Order [DE 376] was filed in the present case, the Sixth Circuit Court of Appeals, in *United States v. Holloway,* found the following:

> Holloway was sentenced as a career offender, not based on the drug quantities involved in his offense. However, because the 2010 Act lowered the statutory maximum imprisonment penalty for twenty-eight grams or less of crack cocaine, a defendant would receive a lower career

3

> offender level, which would lower his advisory guideline range. At the time of Holloway's sentencing, his possession of five or more grams of crack cocaine carried a statutory penalty of five to forty years. This resulted in a career offender level of 34, a criminal history category of VI, and an advisory guideline range of 262 to 327 months. If the 2010 Act had been in effect at the time of his sentencing, Holloway's career offender level would be 32, his criminal history category VI, and his applicable guideline range 210 to 262 months. Therefore, Holloway is eligible for a sentence reduction for Count 1 under the 2010 Act.

No. 19-5180 (6th Cir. Sep. 5, 2019); *see also United States v. Holloway,* No. 5:05-cr-63-JMH-CJS, DE 136, at 2 (E.D. Ky. Sep. 5, 2019). On October 2, 2019, considering the Sixth Circuit's holding in *Holloway*, the undersigned directed the United States Probation Office ("USPO") to prepare an analysis of the First Step Act's impact on Defendant Lawrence Kemp Tennille's sentence. [DE 400].

On October 10, 2019, the Court received USPO's Analysis [DE 403], which found that under the First Step Act, Tennille may be eligible for a sentence reduction, and his original offense level of 43 with an advisory guideline range of life imprisonment should be recalculated to an amended offense level of 38 with an advisory guideline range of 360 months to life imprisonment. However, as USPO correctly asserts, on October 6, 2016, Tennille's sentence was commuted to 360 months imprisonment by President Barack Obama. [DE 403]. As a result, the undersigned previously found Tennille was not entitled to any further reduction of his sentence. [DE 402; DE 407]. However, in the Sixth Circuit's April 2, 2020, Order

4

[DE 422], the Sixth Circuit brings this Court's attention to the Sixth Circuit's decision in *Dennis v. Terris*, 927 F.3d 955, 958 (6th Cir. 2019), which found, "[A] prisoner who receives a presidential commutation continues to be bound by a judicial sentence." *See also* [DE 422 (citing *United States v. Roberts*, No. 19-3282 (6th Cir. Dec. 30, 2019) (order) (applying *Dennis* to a motion for a sentence reduction under the First Step Act)). In sum, in *Dennis*, the Sixth Circuit explained that while a prisoner may have received a presidential commutation, the prisoner is still bound by a judicial sentence because commutation merely "changes . . . how the sentence is carried out by switching out a greater punishment for a lesser one." *Dennis*, 927 F.3d at 958 (citing *Biddle v. Perovich*, 274 U.S. 480, 487 (1927); *Ex parte Wells*, 59 U.S. (18 How.) 307, 315, 15 L.Ed. 421 (1855)). Additionally, many commutations include conditions that if not properly followed would result in a prisoner's term of imprisonment that was reduced by a commutation reverting to the higher amount of the earlier judicial sentence. *Id*. (citing *Vitale v. Hunter*, 206 F.2d 826, 829 (10th Cir. 1953)).

In accordance with the Sixth Circuit's Order [DE 422, at 2], the Court finds Tennille's past commutation does not in itself mean he is unable to receive a sentence reduction under the First Step Act, and the Court will now consider whether, in its

5

discretion, Tennille is entitled to a sentence reduction under the First Step Act.

"Under section 404(b) of the First Step Act, a defendant who committed a 'covered offense' may move to have a district court 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 ... were in effect at the time the covered offense was committed.'" *United States v. Foreman*, No. 19-1827, 2020 WL 2204261, at *3 (6th Cir. May 7, 2020). "A district court, however, is not 'require[d] ... to reduce any sentence' pursuant to section 404(b). *Id.* (quoting First Step Act § 404(c); § 404(b)). "Instead, the choice of whether to grant such relief to an otherwise eligible defendant is left to 'the district court's sound discretion.'" *Id.* (quoting *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019)).

In the present case, the Parties do not dispute that Tennille committed a covered offense. In Tennille's Motion to Reduce Sentence Under Section 404 of the First Step Act of 2018 [DE 424], he requests the Court reduce his sentence to time served. To completely review the merits of Tennille's Motion [DE 424], the Court must recalculate Tennille's advisory guideline range and consider "both the factors in [18 U.S.C.] § 3553 [and] Congress's significant decision to allow prisoners to retroactively benefit from the Fair Sentencing Act." *United States v. Maxwell*, 800 F. App'x. 373, 378 (6th Cir. 2020); *see also United States v. Foreman*,

6

2020 WL 2204261, at *6 (quoting *United States v. Allen*, 956 F.3d 355, 357 (6th Cir. 2020) ("Without mandating any particular set of procedures, *Allen* specifically found that the First Step Act authorizes a district court to consider the full range of § 3553(a) factors, including a defendant's applicable Guidelines range and 'other relevant information about the defendant's history and conduct.'")).

In *United States v. Foreman*, the Sixth Circuit found the following:

> Under section 404(b) and (c) of the First Step Act, a district court is authorized to do two things with respect to a defendant's covered offense: (1) determine the statutory and Guidelines ranges "as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed," and (2) exercise its discretion to impose a new sentence somewhere between the revised statutory minimum and the existing sentence.

2020 WL 2204261, at *6.

Here, Tennille, the United States, USPO, and the Court agree that Tennille's current advisory guideline range is 360 months to life imprisonment. [DE 403; DE 424, at 9-10; DE 427]. In Tennille's Motion to Disagree with the U.S. Probation Officer's Memorandum Analysis of Retroactive Application [DE 405], he challenges his career offender status by objecting to the USPO's finding that he had three (3) prior drug convictions. However, in Tennille's most recent Motion [DE 424, at 9], he "agrees that, as it pertains to his Guideline range, . . . he remains a career offender." Thus,

7

the Court will deny Tennille's Motion to Disagree with the U.S. Probation Officer's Memorandum Analysis of Retroactive Application [DE 405] as moot and finds Tennille's current advisory guideline range is 360 months to life imprisonment.

Next, the Court will consider the factors set forth in 18 U.S.C. § 3553(a), which are as follows:

> **(a) Factors to be considered in imposing a sentence.**-- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>     **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>     **(2)** the need for the sentence imposed--
>         **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>         **(B)** to afford adequate deterrence to criminal conduct;
>         **(C)** to protect the public from further crimes of the defendant; and
>         **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>     **(3)** the kinds of sentences available;
>     **(4)** the kinds of sentence and the sentencing range established for--
>         **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>             **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

8

>    **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>        **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>    **(5)** any pertinent policy statement--
>        **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>        **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>    **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>    **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). In addition to the factors found in § 3553(a), the Court may consider postsentencing rehabilitation. *See Pepper v. United States*, 562 U.S. 476, 504-05 (2011) (finding "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors" and holding "[d]istrict courts post-*Booker* may consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range").

In Tennille's present Motion to Reduce Sentence Under Section 404 of the First Step Act of 2018 [DE 424], he asserts that the fact that he "has spent more than two decades in prison, engaged in numerous educational, vocational, and rehabilitation courses, and maintained a nearly flawless disciplinary record" demonstrates "that [his] sentence has sufficiently complied with the goals set forth in § 3553(a)."[1] [DE 424, at 13]. Tennille admits he received one disciplinary sanction in August 1999 "for the use of drugs/alcohol" but "has not received a single disciplinary sanction" since that time. *Id*. at 16 (citing [DE 403]). Tennille opines that "a time-served sentence reflects the serious[ness] of the offense, promotes respect for law, and provides just punishment." *Id*. at 13. Although Tennille no longer disputes his career offender status, he argues the following:

> Mr. Tennille was sentenced as a career offender based on two predicate drug trafficking felonies. *See* USPO Analysis, at 3 [DE 403]. In 1997, the original count of conviction under §§ 841(a)(1), 846, and 851 combined with Mr. Tennille's offense level and Criminal History Category required a minimum mandatory sentence of life imprisonment. *See id.* at 2-3. Today, if calculated by drug quantity rather than the career offender provision, Mr. Tennille's base offense level would be 24 (§2D1.1(c)(8)), with a four (4) point increase based on his role (§3B1.1(a)), and a two (2) point increase for obstruction (§3C1.1). His adjusted offense level would be 30. U.S.S.G. §2-3; *see also* USPO Analysis, at 3 [DE

---

[1] The Court trusts that Tennille's statements regarding his conduct in prison are accurate. Additionally, Tennille's Individualized Reentry Plan [DE 424-4] confirms that he had no disciplinary actions in the six (6) months preceding March 1, 2020, and that he has, indeed, participated in several courses over the past two decades. Moreover, the United States agrees, "Tennille has apparently used his time in prison productively." [DE 427, at 5].

10

> 403]. Mr. Tennille's 11 criminal history points would place him in Criminal History Category V. PSR, at 14 [DE 315]. Mr. Tennille would be subject to a Guideline range of 151–188 months. U.S.S.G. § 5A. This is around half of the career-offender range of 360 months to life. *Id.* at § 4.

[DE 424, at 15]. The fact of the matter is that Tennille is designated as a career offender, and he no longer disputes that designation. Tennille stating what his guideline range would have been without the career offender designation does not support his request for a downward variance because it does not reflect the reality of his criminal history.

Tennille's status as a career offender is not the only reason the Court finds his request for a downward variance lacking. While the Court recognizes that the nature of both Tennille's offense and his prior convictions are all considered non-violent offenses, his conduct during the commission of the offense included threats of violence. Specifically, one of Tennille's co-conspirators testified that after she failed to wait on two of Tennille's other co-conspirators before she returned to Lexington from Detroit, Tennille went to her residence and threatened to shoot her and burn her house down. [DE 315, at 7]. Tennille's efforts toward rehabilitation are to be commended and hopefully continued. However, those efforts do not change the seriousness of Tennille's past conduct, which the Court will now address.

11

Between September 1994 and January 1996, Tennille participated in the organized distribution of large amounts of cocaine in Lexington and Richmond, Kentucky. [DE 315]. During the time that the distribution took place, Tennille, a resident of Detroit, Michigan, transported cocaine from Detroit to Kentucky and supplied others with cocaine that he then directed them to transport to Lexington and Richmond, Kentucky. *Id*. at 5-7. While Tennille was in Kentucky, he recruited addicts who would give him permission to use their residence for the cooking and distribution of crack cocaine. *Id*. at 7-9. The United States posits, "Tennille's group distributed more than 1.5 kilograms of crack cocaine." [DE 427, at 2 (citing [DE 315, at 9])].

In July 1996, a federal grand jury indicted Tennille and two others on charges of conspiracy to possess with intent to distribute in excess of fifty (50) grams of a mixture or substance containing a detectable amount of cocaine base. [DE 47]. Tennille pleaded not guilty, testified in his own defense, denied responsibility for the charges against him, and claimed those who testified against him did so to gain leniency in their own criminal cases. [DE 315, at 10]. At the end of his trial, the jury found Tennille was guilty. [DE 119]. Tennille was then sentenced to a term of life imprisonment, [DE 142], which President Obama later commuted to a term of 360 months imprisonment, [DE 349].

Tennille's argument that his "[i]mmediate release will also avoid unwarranted disparities" because "sentences for career offenders . . . , those with only drug trafficking predicate offenses, have trended downward in the last two decades" is unpersuasive. [DE 424, at 19]. The fact that career offenders with only drug trafficking predicate offenses often receive sentences below the guideline range does not entitle Tennille to such a sentence. As Tennille correctly asserts, "[S]pecific variables make each sentence unique to the individual offender." *Id*. at 19-20. Tennille's criminal history is not that of a career offender who has repeatedly trafficked in small quantities. While Tennille's criminal history shows that his earlier drug crimes involved quantities that were less than fifty (50) grams, his present offense conduct involved his group of conspirators distributing a large quantity of cocaine, around 1.5 kilograms. [DE 315, at 11-16]. Thus, Tennille's criminal history shows that as time went on, he was distributing substantially more drugs than he previously had.

Moreover, Tennille was not a mere distributer. He also enlisted the help of others to distribute cocaine and persuaded individuals to either assist him or assist those who were already helping him. To persuade said individuals, Tennille used intimidation and offered them cocaine and money. *Id*. at 7.

13

Pursuant to 18 U.S.C. § 3553(a)(2)(D), Tennille requests his sentence be reduced to time served due to the threat posed by the ongoing COVID-19 pandemic. [DE 424, at 20-24]. 18 U.S.C. § 3553(a)(2)(D) states that the Court must consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Tennille's assertion that "he is at a much higher risk for severe complications or even death should he contract COVID-19" does not pertain to his medical care or treatment for a current condition. [DE 424, at 24]. Instead, he asks that his sentence be reduced to time served based on the possibility that he could contract a new illness that could exacerbate those that are already present.

In *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *5 (E.D. Mich. May 15, 2020), the United States District Court for the Eastern District of Michigan was faced with a similar case involving an inmate at FCI Allenwood who moved for compassionate release under 18 U.S.C. § 3582(c)(1) and found the following:

> [C]onsidering Defendant's "needed . . . medical care" for his current conditions and the medical care he may need in the future if he were to contract COVID-19, Defendant's detention at FCI Allenwood could serve as a superior alternative to release. 18 U.S.C. § 3553(a)(2)(D). At FCI Allenwood, Defendant is detained in a controlled environment, is constantly monitored, and is provided medical care. The court is given no

>assurances as to what, if any, medical care Defendant would receive upon release.

Admittedly, Tennille's predicament is not entirely identical to that of the defendant in *Austin*. Unlike FCI Allenwood, FCI Milan, where Tennille is currently imprisoned, has had several individuals test positive for COVID-19. On the other hand, like the defendant in *Austin*, Tennille does not allege that he has tested positive for COVID-19, and if he were to contract COVID-19, there is no evidence before the Court that suggests Tennille would receive better medical care outside of prison. Furthermore, Tennille fails to assert that he would receive better medical care outside of prison for his current medical conditions. In fact, if the Court were to reduce Tennille's sentence to time served, the Court has no way of knowing if Tennille would receive any treatment for his current medical conditions.

While the Court understands the risks the pandemic poses for incarcerated individuals, such as Tennille, especially at a facility that has numerous individuals who have tested positive for COVID-19, arguing for a sentence reduction or requesting release due to the ongoing pandemic solely under 18 U.S.C. § 3553(a)(2)(D) is not the correct avenue for relief. Tennille, unlike the defendant in *Austin*, has not filed a motion for compassionate release, and since Tennille is represented by counsel, he is not entitled to the same liberal standard that is

15

afforded to *pro se* prisoners in terms of the Court construing requests for relief. When considered alongside the other factors found in 18 U.S.C. § 3553(a), Tennille's COVID-19 concerns do not justify reducing his sentence to time served.

Even excluding Tennille's previously mentioned threats to his co-conspirator, by distributing cocaine, Tennille caused a tremendous amount of harm to a lot of people. Due to the nature of drug addiction, much of that harm is irreparable, and to many, the effects of Tennille's actions linger to do this day. Reducing Tennille's sentence below 360 months would do nothing to alleviate the pain he has caused the drug users he enabled or their families and communities. Moreover, reducing Tennille's sentence below the advisory guideline range would likewise reduce the deterring effect his sentence has on others. In contrast, a sentence of 360 months imprisonment promotes respect for the law and provides just punishment for the offense. Tennille's offense is no less harmful today than it was when he was originally convicted, and for that reason, as well as the foregoing reasons stated herein, the Court will deny his request for a downward variance and reduce his sentence to time served. Instead, the Court will sentence Tennille to 360 months imprisonment, the bottom of his advisory guideline range and the amount of imprisonment previously given to him by President Obama's commutation. Accordingly, Tennille's release date remains scheduled for August 17, 2022. *See* [DE 424-4, at 1;

DE 425, at 2]. Having considered the matter fully, and being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1) Defendant Lawrence Kemp Tennille's Motion for Leave to Appeal *in forma pauperis* [DE 398] is **GRANTED IN PART**, insofar as it pertains to Tennille's request for leave to appeal *in forma pauperis*;

(2) Tennille's Motion for Leave to Appeal *in forma pauperis* [DE 398] is **DENIED AS MOOT IN PART**, insofar as it pertains to Tennille's request for appointment of counsel;

(3) Tennille's Notice & Request to File Appeal [DE 399] is **DENIED AS MOOT**;

(4) Tennille's Motion to Disagree with the U.S. Probation Officer's Memorandum Analysis of Retroactive Application [DE 405] is **DENIED AS MOOT**;

(5) Tennille's Motion for Clarification [DE 406] is **DENIED AS MOOT**;

(6) Tennille's Motion to Reduce Sentence Under Section 404 of the First Step Act of 2018 [DE 424] is **GRANTED IN PART**, insofar as it pertains to Tennille's request for a reduction of his sentence;

(7) Tennille's Motion to Reduce Sentence Under Section 404 of the First Step Act of 2018 [DE 424] is **DENIED IN PART**, insofar as it pertains to Tennille's request for a downward variance and reduction of his sentence to time served;

17

(8) Tennille's sentence is **REDUCED** to **360 months imprisonment;**

(9) The United States Probation Office **SHALL** prepare an amended judgment consistent with this order; and

(10) The Clerk of Court is directed to leave the United States Probation Office's Analysis [DE 403] filed in the record.

This the 29th day of May, 2020.



Signed By:
Joseph M. Hood
Senior U.S. District Judge